## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORWICH COMMERCIAL GROUP, INC. d/b/a NORCOM MORTGAGE, | : : : |
| Plaintiff, | : Civil Action No.: 23-609 : |
| v. | : : |
| THOMAS QUINTALINO, DAVID COOPER, and ANA MARKETING LLC, | : JURY TRIAL DEMANDED : : |
| Defendants. | : : MAY 10, 2023 |

## COMPLAINT

Plaintiff Norwich Commercial Group, Inc. d/b/a Norcom Mortgage ("Norcom Mortgage" or "Plaintiff"), by and through its attorneys, for its Complaint against Defendants Thomas Quintalino ("Quintalino"), David Cooper ("Cooper"), and ANA Marketing LLC ("ANA Marketing," and together with Quintalino and Cooper, "Defendants") alleges the following:

## NATURE OF THE ACTION

1.     This is a dispute about two former employees (Quintalino and Cooper) at a mortgage lending company who, in contravention of their employment contracts and relevant policies, utilized their management positions to submit fraudulent invoices for payment to their employer (Plaintiff) on behalf of a marketing company (ANA Marketing) while also concealing their ownership interest in that company.  In addition, Quintalino and Cooper deliberately misrepresented the purpose of the ANA Marketing invoices, claiming that the charges therein related to valid marketing expenses.  Instead, Defendants used the money that they improperly and fraudulently received to pay for Quintalino and Cooper's personal benefit, including to make their

car payments.  Defendants' contractual violations and tortious actions has resulted in significant damage, more than $125,000.00, to Plaintiff.

## PARTIES

2.     Norcom Mortgage is a corporation incorporated under the laws of the State of Connecticut, with its principal place of business located at 38 Security Drive, Avon, Connecticut 06001.

3.     Quintalino is a citizen of New Jersey and resides in Tabernacle, New Jersey.

4.     Cooper is citizen of New Jersey and resides in Marlton, New Jersey.

5.     ANA Marketing is a New Jersey limited liability company with its principal place of business located at 1 Eves Drive, Suite 111, Marlton, New Jersey 08053.  Quintalino and Cooper are the two sole members of ANA Marketing.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship existing between the adverse parties and the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional sum of $75,000.00.

7.     This Court has personal jurisdiction over Quintalino because Quintalino irrevocably consented to personal jurisdiction in this judicial district pursuant to a contractual agreement.

8.     This Court has personal jurisdiction over Cooper because Cooper irrevocably consented to personal jurisdiction in this judicial district pursuant to a contractual agreement.

9.     This Court has personal jurisdiction over ANA Marketing because it has conducted or directed business in this judicial district.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Quintalino and Cooper irrevocably consented to venue in this Court pursuant to a contractual agreement.

## FACT ALLEGATIONS

11.     In 2021, Norcom Mortgage decided to open a branch in Marlton, New Jersey (the "Marlton Branch").

12.     With the prospect of expanding into the mortgage lending market in New Jersey, Norcom Mortgage set out to hire employees to work at the future Marlton Branch.

### Quintalino's Employment with Norcom Mortgage

13.     On June 24, 2021, Norcom Mortgage extended an offer of employment to Quintalino for the position of Vice President, Branch Manager at the Marlton Branch (the "Quintalino Offer Letter"). A true and correct copy of the Quintalino Offer Letter is attached hereto as **Exhibit 1**.

14.     Pursuant to the Quintalino Offer Letter, as Vice President, Branch Manager, Quintalino would be "responsible for [his] own mortgage loan production, and the overall management of the future Marlton, NJ branch, including the recruitment of Loan Officers, and the management of the origination activities and production of the branch team." *See id.* at 1.

15.     While the Quintalino Offer Letter promised Quintalino a base salary and a signing bonus, it also mentioned that "Norcom Mortgage will compensate [Quintalino] based on the terms specified in [his] separate Norcom Mortgage Retail Plus Branch Manager Employment Agreement." *See id.*

3

16.    Quintalino accepted Norcom Mortgage's offer of employment on June 25, 2021.

*See id.* at 2.

17.    Thereafter, on July 26, 2021, Quintalino signed the Norcom Mortgage Retail Plus

Branch Manager Agreement (the "Quintalino Compensation Agreement," and together with the

Quintalino Offer Letter, the "Quintalino Employment Agreements").

18.    The Quintalino Compensation Agreement explicitly provides that the "Retail Plus

Branch Manager acknowledges and agrees that the compensation of the Retail Plus Branch

Manager is subject to all policies and procedures of Norcom [Mortgage]."

19.    Additionally, the Quintalino Compensation Agreement also provides:

> The laws of the State of Connecticut shall control the interpretation
> and enforcement of this Agreement, without regard to conflicts of
> law principles. The parties hereto irrevocably consent that any legal
> action or proceeding arising out of, or in any manner relating to, this
> Agreement, or any other agreement between the parties, may only
> be brought in a court of the State of Connecticut sitting in Hartford
> County or in the United States District Court for the District of
> Connecticut located in Hartford, Connecticut. By the execution and
> delivery of this Agreement, the parties hereto expressly and
> irrevocably assent and submit to the personal jurisdiction of any of
> such courts in any such action or proceeding.

20.    On Quintalino's first day of work, he received a copy of the Employee Handbook,

which outlines Norcom Mortgage's policies and procedures.

21.    Norcom Mortgage has a robust policy with regard to conflicts of interest (the

"Conflict of Interest Policy").  The Employee Handbook provides, in pertinent part, that:

> Norcom strives to avoid real or potential conflicts of interest. <u>It is
> your duty as an employee to adhere to the following guidelines
> regarding conflicts of interest.</u> If it is unclear what might be a
> potential conflict or if you have any questions regarding a conflict[]
> of interest, contact Phil DeFronzo, Gerry Gordon, or your manager.
>
> Norcom is regulated by the Consumer Finance Protection Bureau
> (CFPB). As part of the CFPB's authority, the agency may

4

investigate all manner of business and employee relationships in order to ensure that risks to the consumer are mitigated or removed completely. <u>A conflict of interest may arise where you are in a position to influence a decision or have business dealings on behalf of Norcom that may result in personal gain for you.</u>

Norcom does not automatically assume a conflict of interest if you have a relationship with another company. <u>Nevertheless, if you have any influence or transactions involving purchases, contracts or leases, you must notify your manager immediately.</u> By informing Norcom of the possibility of an actual or potential conflict of interest, we can establish safeguards, protect consumers and address internal controls as needed.

Our industry is one where compensation is based on the size and volume of business. As a result, the inherent risks and pressures of normal business operations can be greater. Norcom is particularly sensitive to conflicts of interest and compliance. <u>Please bring any such case or potential case to Gerry Gordon, or a manager immediately.</u>

(Emphases added).

22.     Upon receipt of the Employee Handbook, Quintalino acknowledged that he "read and understood [Norcom Mortgage's] policies and procedures . . .."  A true and correct copy of the Employee Manual Acknowledgment that Quintalino signed on July 6, 2021 (the "Quintalino Employee Manual Acknowledgment"), is attached hereto as **Exhibit 2**.

23.     Norcom Mortgage fully performed under the terms of the Quintalino Employment Agreements by paying Quintalino his promised salary, commissions and expenses during the time of his employment with Norcom Mortgage.

**<u>Cooper's Employment with Norcom Mortgage</u>**

24.     On June 24, 2021, Norcom Mortgage extended an offer of employment to Cooper for the position of Assistant Vice President, Assistant Branch Manager at the Marlton Branch (the "Cooper Offer Letter"). A true and correct copy of the Cooper Offer Letter is attached hereto as **Exhibit 3**.

25.     Pursuant to the Cooper Offer Letter, as Assistant Vice President, Assistant Branch Manager, Cooper would be "responsible for [his] own mortgage loan production, and assisting with the overall management of the future Marlton, NJ branch, including the recruitment of Loan Officers, and the management of the origination activities and production of the branch team." *See id.* at 1.

26.     While the Cooper Offer Letter promised Cooper a base salary and a signing bonus, it also mentioned that "Norcom Mortgage will compensate [Cooper] based on the terms specified in [his] separate Norcom Mortgage Branch Loan Originator Compensation Agreement." *See id.*

27.     Cooper accepted Norcom Mortgage's offer of employment on June 25, 2021. *See id.* at 2.

28.     Thereafter, on July 26, 2021, Cooper signed the Norcom Mortgage Branch Loan Originator Compensation Agreement (the "Cooper Compensation Agreement," and together with the Cooper Offer Letter, the "Cooper Employment Agreements").

29.     The Cooper Compensation Agreement explicitly provides that the "Retail Plus Branch Manager acknowledges and agrees that the compensation of the Retail Plus Branch Manager is subject to all policies and procedures of Norcom [Mortgage]."

30.     Additionally, the Cooper Compensation Agreement provides:

> The laws of the State of Connecticut shall control the interpretation and enforcement of this Agreement, without regard to conflicts of law principles. The parties hereto irrevocably consent that any legal action or proceeding arising out of, or in any manner relating to, this Agreement, or any other agreement between the parties, may only be brought in a court of the State of Connecticut sitting in Hartford County or in the United States District Court for the District of Connecticut located in Hartford, Connecticut. By the execution and delivery of this Agreement, the parties hereto expressly and irrevocably assent and submit to the personal jurisdiction of any of such courts in any such action or proceeding.

31.     Similar to Quintalino, on or about Cooper's first day of work, he received a copy of the Employee Handbook, which outlines Norcom Mortgage's policies and procedures, including the Conflict of Interest Policy.

32.     Upon receipt of the Employee Handbook, Cooper acknowledged that he "read and understood [Norcom Mortgage's] policies and procedures . . .."  A true and correct copy of the Employee Manual Acknowledgment that Cooper signed on July 6, 2021 (the "Cooper Employee Manual Acknowledgment"), is attached hereto as **Exhibit 4**.

33.     Norcom fully performed under the terms of the Cooper Employment Agreements by paying Cooper his promised salary, commissions and expenses during the time of his employment with Norcom Mortgage.

**The Marlton Branch**

34.     To help facilitate the success of the Marlton Branch, Norcom Mortgage assisted Quintalino and Cooper with obtaining a lease for an office location, permitted the hiring of new employees with signing bonuses, and covered the costs of getting said new employees the requisite professional licenses.

35.     Because the Marlton Branch and its employees were not entering into the mortgage lending market in New Jersey with a large amount of referral partners (i.e. realtors and builders), Norcom Mortgage permitted the Marlton Branch to purchase advertisements and other marketing services to help generate business.

36.     Despite Norcom Mortgage's substantial financial investment, and under Quintalino and Cooper's leadership, the Marlton Branch was not profitable, and there were no prospects indicating that the branch's financial status would change any time soon.

37.    As such, in or about September 2022, Norcom Mortgage conducted an investigation into the Marlton Branch's production and expenses.

38.    As part of that investigation, the Chief Financial Officer of Norcom Mortgage noticed a substantial uptick in marketing expenses for the Marlton Branch, specifically from a company called ANA Marketing.

39.    Through independent research, the Chief Financial Officer found that Quintalino and Cooper are the two sole members of ANA Marketing. A true and correct copy of the Certificate of Formation of ANA Marketing is attached hereto as **Exhibit 5**.

40.    At no point during Quintalino's and Cooper's employment with Norcom Mortgage did either employee disclose their membership interest in ANA Marketing.

41.    Norcom Mortgage did not enter into a contract with ANA Marketing, nor did it authorize any of its employees (including those in the Marlton Branch) to enter into a contract with ANA Marketing.

42.    From July 2021 to August 2022, Quintalino and Cooper, in their capacities as Vice President and Branch Manager, and Assistant Vice President and Assistant Branch Manager of the Marlton Branch, submitted expense requests for services rendered by ANA Marketing (the "ANA Marketing Invoices").

43.    The ANA Marketing Invoices started at $3,500.00 and steadily increased until ANA Marketing was charging Norcom Mortgage $15,850.00 on a monthly basis.

44.    From July 2021 to August 2022, Cooper and Quintalino submitted a total of $148,650.00 in invoices from ANA Marketing to Norcom Mortgage for payment. An itemized list of the invoices is below for reference.

| Vendor Name | Request Total | Invoice Date | Invoice Number |
|---|---|---|---|
| ANA MARKETING LLC | $3,500.00 | -- | 2021-07 |
| ANA MARKETING LLC | $5,700.00 | 8/17/2021 | 2021-08 |
| ANA MARKETING LLC | $7,000.00 | 10/1/2021 | 2021-09 |
| ANA MARKETING LLC | $8,300.00 | 11/1/2021 | 2021-010 |
| ANA MARKETING LLC | $9,000.00 | 12/1/2021 | 2021-011 |
| ANA MARKETING LLC | $9,750.00 | 1/3/2022 | 2021-012 |
| ANA MARKETING LLC | $9,750.00 | 1/25/2022 | 2022-01 |
| ANA MARKETING LLC | $10,750.00 | 2/25/2022 | 2022-02 |
| ANA MARKETING LLC | $10,750.00 | 3/25/2022 | 2022-03 |
| ANA MARKETING LLC | $10,750.00 | 4/25/2022 | 2022-04 |
| ANA MARKETING LLC | $15,850.00 | 5/25/2022 | 2022-06 |
| ANA MARKETING LLC | $15,850.00 | 6/25/2022 | 2022-07 |
| ANA MARKETING LLC | $15,850.00 | 7/25/2022 | 2022-09 |
| ANA MARKETING LLC | $15,850.00 | 8/25/2022 | 2022-10 |

45.     To date, Norcom Mortgage has submitted payments to ANA Marketing in the amount of $132,800.00 for the invoices from July 2021 through July 2022.

46.     Following Norcom Mortgage's investigation into the ANA Marketing Invoices, Norcom Mortgage did not submit payment to ANA Marketing for the August 2022 invoice because of the discovered accounting discrepancies and undisclosed conflict of interest.

47.     Further, Quintalino and Cooper were asked to provide receipts to justify the growing expenses on the ANA Marketing Invoices.

48.     On or about September 21, 2022, Cooper provided receipts purporting to show ANA Marketing's expenditures on behalf of Norcom Mortgage for the months of May, June and July 2022, but failed to produce any other receipt

49.     For this three-month period, ANA Marketing invoiced Norcom Mortgage a total of $47,550.00, which included unjustifiable services and/or expenses during this period.

50.     As the two sole members of ANA Marketing, Quintalino and Cooper knew or should have known that the ANA Marketing Invoices submitted to Norcom Mortgage for payment had illegitimate charges or expenses.

51.     Once confronted about the accounting discrepancies related to the ANA Marketing Invoices, on or about October 12, 2022, Cooper and Quintalino disclosed in an email to the Chief Financial Officer that Cooper and Quintalino used ANA Marketing funds to pay for their personal car payments.

52.     Once Quintalino's contractual breach and/or fraud became known, and instead of taking responsibility for his actions, Quintalino tendered his resignation to Norcom Mortgage on November 4, 2022.

53.     Likewise, Cooper tendered his resignation to Norcom Mortgage on November 14, 2022 for the same reasons.

54.     In or about November 2022, the Marlton Branch closed.

**The Demand Letter**

55.     On February 3, 2023, Norcom Mortgage sent a letter to Quintalino and Cooper (the "Demand Letter") demanding that they produce a complete record of all receipts supporting the expenses incurred by ANA Marketing on behalf of Norcom Mortgage for the period of July 2021 through August 2022. A true and correct copy of the Demand Letter is attached hereto as **Exhibit 6**.

56.     To date, Norcom Mortgage has not received a response from Quintalino or Cooper with respect to the Demand Letter.

57.     As a result of Defendants' aforementioned actions, Norcom Mortgage has suffered significant damages.

## FIRST COUNT
### Fraud (Against All Defendants)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in the Paragraphs One through Fifty-Seven as if fully set forth herein.

58.     Defendants each acted individually and in concert to defraud Norcom Mortgage by submitting the ANA Marketing Invoices with illegitimate charges related to the services rendered and related expenses.

59.     At the time that ANA Marketing generated each invoice between July 2021 and August 2022, it knew that the invoice contained these false representations as to the purported services rendered and related expenses.

60.     Further, Quintalino and Cooper, as the two sole members of ANA Marketing, knew that ANA Marketing falsely represented the services and related expenses on the ANA Marketing Invoices.

61.     Defendants intended that the false representations on the ANA Marketing Invoices would induce Norcom Mortgage to pay the requested amount on the invoice.

62.     Norcom Mortgage relied on the false representations made on the ANA Marketing Invoices, and, to its detriment, paid the amounts claimed to be "due and owed" on the invoices to ANA Marketing.

63.     As a result, Norcom Mortgage has been damaged by the false representations made by Defendants because Norcom Mortgage paid ANA Marketing for purported services and expenses that either did not exist or were never in fact performed on behalf of Norcom Mortgage.

64.     Accordingly, Norcom Mortgage has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

## SECOND COUNT
### Conspiracy to Commit Fraud (Against All Defendants)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Sixty-Four of Count One as if fully set forth herein.

65.     Each of Defendants acted in combination to commit fraud, including inducing Norcom Mortgage to pay invoices from ANA Marketing for purported services and expenses that either did not exist or were never in fact performed on behalf of Norcom Mortgage

66.     Defendants conspired to create and submit fraudulent invoices to Norcom Mortgage for alleged services rendered by ANA Marketing and related expenses.

67.     ANA Marketing, in furtherance of the conspiracy, generated the ANA Marketing Invoices to Norcom Mortgage that contained fraudulent charges for services and expenses.

68.     Quintalino and Cooper, in furtherance of the conspiracy, submitted the fraudulent ANA Marketing Invoices for payment.

69.     In reliance on the disclosures and charges on the ANA Marketing Invoices, Norcom Mortgage paid the amounts requested to ANA Marketing for the invoices submitted between July 2021 through July 2022.

70.     As a result of the Defendants' deceitful and fraudulent actions, Norcom has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

## THIRD COUNT
### Breach of Contract (Against Defendants Quintalino and Cooper)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Fifty-Seven as if fully set forth herein.

58.     Norcom Mortgage extended an offer of employment to Quintalino on June 24, 2021, which Quintalino accepted on June 25, 2021.

12

59.    In furtherance of Quintalino's employment with Norcom Mortgage, Quintalino signed the Quintalino Compensation Agreement on July 26, 2021.

60.    By accepting the terms of the Quintalino Employment Agreements, Quintalino and Norcom Mortgage formed a valid and enforceable contractual relationship.

61.    Similarly, Norcom Mortgage extended an offer of employment to Cooper on June 24, 2021, which Cooper accepted on June 25, 2021.

62.    In furtherance of Cooper's employment with Norcom Mortgage, Cooper signed the Cooper Compensation Agreement on July 26, 2021.

63.    By accepting the terms of the Cooper Employment Agreements, Cooper and Norcom Mortgage formed a valid and enforceable contractual relationship.

64.    The Quintalino Compensation Agreement and the Cooper Compensation Agreement explicitly provide that compensation is "subject to all policies and procedures of Norcom [Mortgage]."

65.    Pursuant to the Conflict of Interest Policy in the Employee Handbook, "if you have any influence or transactions involving purchases, contracts or leases, you must notify your manager immediately."

66.    Both Quintalino and Cooper received and signed written acknowledgments that they understood the policies contained in the Employee Handbook.

67.    In violation of the Conflict of Interest Policy, though, neither Quintalino nor Cooper disclosed that they were the two sole members of ANA Marketing, a company for which they submitted a total of $148,650.00 in invoices to Norcom Mortgage for payment and for which Norcom Mortgage paid $132,800.00 for all-but-one of said invoices.

68.     The failure to disclose this conflict of interest is a breach of Quintalino's and Cooper's Employment Agreements.

69.     At all times relevant herein, Norcom Mortgage fully performed under the terms of the Quintalino's and Cooper's Employment Agreements, including payment of their salaries and bonuses.

70.     As a direct and proximate result of the breach by Quintalino and Cooper, Norcom Mortgage has suffered damages in an amount to be determined at trial, but no less than $563,215.48.

**FOURTH COUNT**
**Unjust Enrichment (Against Defendant ANA Marketing)**

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Fifty-Seven as if fully set forth herein.

58.     From July 2021 through August 2022, ANA Marketing submitted the ANA Marketing Invoices to Norcom Mortgage, totaling $148,650.00.

59.     Under the impression that Norcom Mortgage was paying ANA Marketing for legitimate services rendered and related expenses, Norcom Mortgage paid ANA Marketing a total of $132,800.00, for all invoices submitted between July 2021 through July 2022.

60.     As a result of an internal investigation, Norcom Mortgage discovered that Quintalino and Cooper were the sole two members of ANA Marketing, a conflict of interest that was not disclosed to Norcom Mortgage.

61.     When Norcom Mortgage requested justification of the growing expenses on the ANA Marketing Invoices submitted by Quintalino and Cooper, there were substantial accounting discrepancies with the amounts that were justified versus what was requested an/or paid to ANA Marketing.

62.     ANA Marketing has unjustly benefited by receiving payment for services and expenses that it did not in fact provide on behalf of Norcom Mortgage, to Norcom Mortgage's detriment.

63.     As a result, Norcom Mortgage has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

**FIFTH COUNT**
**Conversion (Against All Defendants)**

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Seventy of Count Two as if fully set forth herein.

71.     From July 2021 through August 2022, ANA Marketing submitted the ANA Marketing Invoices to Norcom Mortgage, totaling $148,650.00.

72.     Under the impression that Norcom Mortgage was paying ANA Marketing for legitimate services rendered and related expenses, Norcom Mortgage paid ANA Marketing a total of $132,800.00, for all invoices submitted between July 2021 through July 2022.

73.     As a result of an internal investigation, Norcom Mortgage discovered that Quintalino and Cooper were the sole two members of ANA Marketing, a conflict of interest that was not disclosed to Norcom Mortgage.

74.     When Norcom Mortgage requested justification of the growing expenses on the ANA Marketing Invoices submitted by Quintalino and Cooper, there were substantial accounting discrepancies with the amounts that were justified versus what was requested an/or paid to ANA Marketing.

75.     Through the submission of the fraudulent invoices by Cooper and Quintalino from ANA Marketing, Defendants have converted $132,800.00 from Norcom Mortgage.

76.     Defendants assumed and exercised ownership and control over the $132,800.00 received from Norcom Mortgage, to the exclusion of Norcom Mortgage.

77.     As a result, Norcom Mortgage has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

## SIXTH COUNT
### Statutory Theft (Against All Defendants)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Seventy-Seven of Count Five as if fully set forth herein.

78.     As the two sole members of ANA Marketing, Quintalino and Cooper knew or should have known about the false representations on the ANA Marketing Invoices.

79.     Defendants acted with intent to deprive Norcom Mortgage of its property when (1) ANA Marketing created the ANA Marketing Invoices with falsely represented services and expenses and (2) Quintalino and Cooper, acting individually and on behalf of ANA Marketing, submitted the ANA Marketing Invoices to Norcom Mortgage for payment.

80.     With the receipt of $132,800.00 related to the ANA Marketing Invoices submitted between July 2021 through July 2022, Defendants deprived Norcom Mortgage of its property and misappropriated the same for their own use and benefit, in violation of Conn. Gen. Stat. § 52-564.

81.     As a result, Norcom Mortgage has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

82.     Norcom Mortgage is also entitled treble damages pursuant to Conn. Gen. Stat. § 52-564.

## SEVENTH COUNT
### Breach of Fiduciary Duty (Against Defendants Quintalino and Cooper)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Fifty-Seven as if fully set forth herein.

58.    Norcom Mortgage extended an offer of employment to Quintalino for the position of Vice President, Branch Manager on June 24, 2021.

59.    Quintalino accepted Norcom Mortgage's offer of employment on June 25, 2021 for the position of Vice President, Branch Manager, including undertaking the duties and responsibilities associated with said position.

60.    Norcom Mortgage extended an offer of employment to Cooper for the position of Assistant Vice President, Assistant Branch Manager on June 24, 2021.

61.    Cooper accepted Norcom Mortgage's offer of employment on June 25, 2021 for the position of Assistant Vice President, Assistant Branch Manager, including undertaking the duties and responsibilities associate with said position.

62.    Quintalino and Cooper were hired in management positions at the Marlton Branch and were entrusted with fostering legitimate business relationships and implementing procedures to ensure the success of this new branch of Norcom Mortgage.

63.    As representatives of Norcom Mortgage, Quintalino and Cooper were obligated to act in good faith with respect any dealings that could impact Norcom Mortgage's business.

64.    In their management positions, Quintalino and Cooper owed Norcom Mortgage a duty of loyalty.

65.    Quintalino and Cooper had an obligation to act in the best interests of Norcom Mortgage.

66.     Instead, Quintalino and Cooper utilized their positions of power at the Marlton Branch and their undisclosed membership of ANA Marketing (a clear conflict of interest pursuant to the Employee Handbook), to mislead and induce Norcom Mortgage into paying ANA Marketing for falsely represented services and expenses in the ANA Marketing Invoices.

67.     As the two sole members of ANA Marketing, Quintalino and Cooper knew or should have known about the false representations on the ANA Marketing Invoices.

68.     Quintalino and Cooper breached their fiduciary duties to Norcom Mortgage by submitting the ANA Marketing Invoices to Norcom Mortgage for payment that contained falsely represented services and expenses.

69.     Quintalino and Cooper advanced their own interests to the detriment of Norcom Mortgage.

70.     Accordingly, Norcom Mortgage has suffered damages that were proximately caused by Quintalino and/or Cooper's breach of their fiduciary duty, in an amount to be determined at trial, but no less than $132,800.00.

71.     Norcom Mortgage is also entitled punitive damages because of Quintalino's and Cooper's misrepresentations to Norcom Mortgage in furtherance of their own personal interests at Norcom Mortgage's expense.

## EIGHTH COUNT
### Breach of the Duty of Loyalty (Against Defendants Quintalino and Cooper)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Fifty-Seven as if fully set forth herein.

58.     Quintalino and Cooper were hired in management positions at the Marlton Branch.

59.     As Vice President, Branch Manager and Assistant Vice President, Assistant Branch Manager, Quintalino and Cooper owed Norcom Mortgage a duty of loyalty, which precluded disloyal actions and self-dealing.

60.     Instead, Quintalino and Cooper utilized their positions of power at the Marlton Branch and their undisclosed membership of ANA Marketing (a clear conflict of interest pursuant to the Employee Handbook), to personally benefit from the funds received by Norcom Mortgage for the ANA Marketing Invoices that contained falsely represented services and expenses.

61.     In submitting the ANA Marketing Invoices to Norcom Mortgage for payment, which they knew or should have known had false representations about the services rendered, Cooper and Quintalino advanced their interests to the detriment of Norcom Mortgage.

62.     Accordingly, Norcom Mortgage has suffered damages that were proximately caused by Quintalino and/or Cooper's breach of their duty of loyalty, in an amount to be determined at trial, but no less than $132,800.00.

63.     Norcom Mortgage is also entitled punitive damages because of Quintalino's and Cooper's misrepresentations to Norcom Mortgage in furtherance of their own personal interests at Norcom Mortgage's expense.

### NINTH COUNT
**Negligence (Against Defendants Quintalino and Cooper)**

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Fifty-Seven as if fully set forth herein.

58.     Quintalino and Cooper, as employees of Norcom Mortgage, had a duty to act reasonably when it came to business dealings and transactions that could affect Norcom Mortgage.

59.     As the two sole members of ANA Marketing, Quintalino and Cooper knew or should have known about the false representations on the ANA Marketing Invoices.

60.     Quintalino and Cooper breached this duty when they permitted ANA Marketing to by submit the ANA Marketing Invoices to Norcom Mortgage for payment with falsely represented services and expenses.

61.     As ANA Marketing's only two members, this scheme fell well outside of Quintalino's and Cooper's normal scope of employment and their undisclosed ownership interest in ANA Marketing is a clear conflict of interest pursuant to Norcom Mortgage's Conflict of Interest Policy.

62.     As a result of Quintalino's and Cooper's deceptive actions, Norcom Mortgage has been injured and has suffered damages in an amount to be determined at trial, but no less than $132,800.00.

63.     Norcom Mortgage is also entitled punitive damages because of Quintalino's and Cooper's misrepresentations to Norcom Mortgage in furtherance of their own personal interests at Norcom Mortgage's expense.

## TENTH COUNT
### (Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, et seq. ("CUTPA") Against All Defendants)

Norcom Mortgage re-alleges and incorporates by reference the allegations contained in Paragraphs One through Eighty-Two of Count Six, Paragraphs Fifty-Eight through Seventy-One of Count Seven, Paragraphs Fifty-Eight through Sixty-Three of Count Eight, and Paragraphs Fifty-Eight through Seventy of Count Three, as if fully set forth herein.

116.     Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of CUTPA.

117.    While employed in management positions at the Marlton Branch, Defendants have engaged in deceptive conduct by submitting the ANA Marketing Invoices, that contained falsely represented services and expenses, to Norcom Mortgage for payment.

118.    Defendants' acts alleged herein were done in the conduct of trade or commerce within the meaning of CUTPA.

119.    Specifically, Defendants violated CUTPA by (1) ANA Marketing creating the ANA Marketing Invoices with falsely represented services and expenses and (2) Quintalino and Cooper, acting individually and on behalf of ANA Marketing, submitting the ANA Marketing Invoices to Norcom Mortgage for payment.

120.    Norcom Mortgage relied upon Cooper and Quintalino to oversee the operations at the Marlton Branch and to ensure the legitimacy of all business expenses.

121.    Instead, Quintalino and Cooper utilized their positions of power at the Marlton Branch and their undisclosed membership of ANA Marketing (a clear conflict of interest pursuant to the Employee Handbook), to mislead and induce Norcom Mortgage into paying ANA Marketing for the falsely represented services and expenses in the ANA Marketing Invoices.

122.    The aforesaid actions of the Defendants offend public policy, and are immoral, unethical, oppressive, and unscrupulous in violation of CUTPA.

123.    The aforesaid actions caused substantial injury to Norcom Mortgage.

124.    Accordingly, Norcom Mortgage has been substantially injured, has suffered an ascertainable loss, and is entitled to damages in an amount to be determined at trial, but no less than $132,800.00.

125.    Under CUTPA, Norcom Mortgage is also entitled punitive damages because of Quintalino's and Cooper's misrepresentations to Norcom Mortgage in furtherance of their own personal interests at Norcom Mortgage's expense, treble damages and an award of attorney's fees.

## DEMAND FOR RE LIEF

WHEREFORE, Plaintiff demands that this Honorable Court award:

1.    Compensatory damages;

2.    Punitive damages where applicable;

3.    Treble damages where applicable;

4.    Attorney's fees and costs where applicable;

5.    Pre-judgment and post-judgment interest to the extent permitted by law; and

6.    Any other relief this Court may deem appropriate.

**PLAINTIFF,**
**NORWICH COMMERCIAL GROUP, INC.**
**d/b/a NORCOM MORTGAGE**

    */s/ Tara L. Trifon*
Tara L. Trifon, Esq. (ct28415)
Locke Lord LLP
20 Church Street, 20th Floor
Hartford, Ct  06103
Telephone:  860.541.7740
Facsimile:  860.527.4198
tara.trifon@lockelord.com
*Attorneys for Plaintiff Norwich Commercial Group, Inc.*
*d/b/a Norcom Mortgage*