**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NORWICH COMMERCIAL GROUP, INC. d/b/a NORCOM MORTGAGE,<br><br>     *Plaintiff*,<br><br>v.<br><br>THOMAS QUINTALINO, DAVID COOPER, and ANA MARKETING, LLC,<br><br>     *Defendants*. | No. 3:23-cv-00609-MPS |

**RULING ON MOTION TO DISMISS**

This case arises from invoices that Defendants Thomas Quintalino and David Cooper submitted to their employer, Plaintiff Norwich Commercial Group, Inc. ("Norcom"), on behalf of Defendant ANA Marketing, LLC ("ANA Marketing"), an entity that they, allegedly unbeknownst to Norcom, owned and controlled. Norcom filed this lawsuit against Quintalino, Cooper, and ANA Marketing ("Defendants") alleging numerous tort claims, breach of contract, statutory theft, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The Defendants have moved to dismiss each of the ten counts under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, the motion to dismiss is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Norcom's Complaint as well as documents attached to its Complaint (ECF No. 1).[1] These facts are accepted as true for the purpose of this motion.

Norcom is a corporation incorporated under the laws of Connecticut with its principal place of business located in Avon, Connecticut. ECF No. 1 at 2 ¶ 2.[2] In 2021, Norcom decided

---

[1] "In considering a motion to dismiss . . . a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996).

1

to open a branch in Marlton, New Jersey (the "Marlton Branch").  *Id.* at 3 ¶ 11.  On June 24,

2021, it extended offers of employment to Quintalino for the position of Vice President, Branch

Manager and to Cooper for the position of Assistant Vice President, Assistant Branch Manager

at the Marlton Branch.  *Id.* at 3 ¶ 13, 5 ¶ 24.  Quintalino and Cooper both accepted their

respective offers of employment on June 25, 2021.  *Id.* at 4 ¶ 16, 6 ¶ 27.  On July 26, 2021,

Quintalino signed the Norcom Mortgage Retail Plus Branch Manager Agreement and Cooper

signed the Norcom Mortgage Branch Loan Originator Compensation Agreement

("Compensation Agreements").  *Id.* at 4 ¶ 17, 6 ¶ 28.  Both agreements explicitly provide that the

employee "acknowledges and agrees" that they are "subject to all policies and procedures of

Norcom."  *Id.* at 4 ¶ 18, 6 ¶ 29.  Both agreements contain the following provision regarding

choice of law and venue:

> The laws of the State of Connecticut shall control the interpretation and
> enforcement of this Agreement, without regard to conflicts of law principles.
> The parties hereto irrevocably consent that any legal action or proceeding
> arising out of, or in any manner relating to, this Agreement, or any other
> agreement between the parties, may only be brought in a court of the State of
> Connecticut sitting in Hartford County or in the United States District Court
> for the District of Connecticut located in Hartford, Connecticut.  By the
> execution and delivery of this Agreement, the parties hereto expressly and
> irrevocably assent and submit to the personal jurisdiction of any of such
> courts in any such action or proceeding.

*Id.* at 4 ¶ 19, 6 ¶ 30.

On Quintalino's and Cooper's first day of work, each received a copy of the Employee

Handbook, which outlines Norcom's policies and procedures, including the following provision

regarding conflicts of interest:

---

[2] The Complaint contains incorrect paragraph numbering.  Count I consists of ¶¶ 58–64; Count III consists of ¶¶ 58–70; and Count IV consists of ¶¶ 58–63.  For this reason, I will cite both the page and the paragraph number when referencing the Complaint.

> Norcom strives to avoid real or potential conflicts of interest.  <u>It is your duty as an employee to adhere to the following guidelines regarding conflicts of interest.</u>  If it is unclear what might be a potential conflict or if you have any questions regarding a conflict[] of interest, contact Phil DeFronzo, Gerry Gordon, or your manager.
>
> Norcom is regulated by the Consumer Finance Protection Bureau (CFPB).  As part of the CFPB's authority, the agency may investigate all manner of business and employee relationships in order to ensure that risks to the consumer are mitigated or removed completely.  <u>A conflict of interest may arise where you are in a position to influence a decision or have business dealings on behalf of Norcom that may result in personal gain for you.</u>
>
> Norcom does not automatically assume a conflict of interest if you have a relationship with another company.  <u>Nevertheless, if you have any influence or transactions involving purchases, contracts or leases, you must notify your manager immediately.</u>  By informing Norcom of the possibility of an actual or potential conflict of interest, we can establish safeguards, protect consumers and address internal controls as needed.
>
> Our industry is one where compensation is based on the size and volume of business.  As a result, the inherent risks and pressures of normal business operations can be greater.  Norcom is particularly sensitive to conflicts of interest and compliance.  <u>Please bring any such case or potential case to Gerry Gordon, or a manager immediately.</u>

*Id.* at 4 ¶¶ 20–21, 7 ¶ 31 (emphasis in original).  On July 6, 2021, Quintalino and Cooper both signed acknowledgements stating that they "read and understood [Norcom's] policies and procedures."  *Id.* at 5 ¶ 22, 7 ¶ 32.  Norcom paid Quintalino and Cooper salaries, commissions, and expenses during the time of their employment in accordance with the terms of their respective Compensation Agreements.  *Id.* at 5 ¶ 23, 7 ¶ 33.

To help generate business in New Jersey, Norcom permitted Quintalino and Cooper to purchase advertisements and other marketing services.  *Id.* at 7 ¶ 35.  The Marlton Branch, however, did not become profitable, so Norcom investigated its production and expenses.  *Id.* at 7–8 ¶¶ 36–37.  During the investigation, Norcom's Chief Financial Officer noticed "a substantial uptick" in marketing expenses for the Marlton Branch, specifically from ANA Marketing, and subsequently found that Quintalino and Cooper are the two sole members of ANA Marketing.

3

*Id.* at 8 ¶¶ 38–39.  At no point during their employment with Norcom did either Quintalino or Cooper disclose their membership interest in ANA Marketing.  *Id.* at 8 ¶ 40.

Between July 2021 and August 2022, Quantalino and Cooper, while acting within the scope of their employment, submitted expense requests for services rendered by ANA Marketing.  *Id.* at 8 ¶ 42.  The invoices started at $3,500 and increased to $15,850 per month, totaling $148,650.  *Id*. at 8 ¶¶ 43–44.  Norcom submitted payments totaling $132,800 to ANA Marketing.  *Id*. at 9 ¶ 45.  It did not submit payment for the August 25, 2022, invoice because it had discovered the alleged undisclosed conflict of interest.  *Id.* at 9 ¶ 46.  Norcom asked Quintalino and Cooper to provide receipts to justify the ANA Marketing invoices, but they only provided receipts for marketing expenditures for May through July 2022.  *Id*. at 9 ¶¶ 47–48.  Norcom found that the invoices for those three months included "unjustifiable services and/or expenses."  *Id.* at 9 ¶ 49.  On October 12, 2022, Quintalino and Cooper disclosed in an email to the Chief Financial Officer that they used ANA Marketing funds to pay for their personal car payments.  *Id.* at 10 ¶ 51.  Quintalino tendered his resignation to Norcom on November 4, 2022, and Cooper tendered his resignation to Norcom on November 14, 2022.  *Id.* at 10 ¶¶ 52–53.  Norcom closed the Marlton Branch in November 2022.  *Id.* at 10 ¶ 54.

On February 3, 2023, Norcom sent a letter to Quintalino and Cooper demanding that they produce a complete record of all receipts supporting the expenses incurred by ANA Marketing on behalf of Norcom for the period of July 2021 to August 2022, but neither responded.  *Id.* at 10 ¶¶ 55–56.

On May 10, 2023, Norcom filed its Complaint asserting several tort claims, breach of contract, statutory theft, and violation of CUTPA.  *See id.* at 11–22 ¶¶ 58–125.  On July 13, 2023, the Defendants filed the pending motion to dismiss, arguing that Norcom fails to plausibly

plead any of its claims. ECF No. 14. Norcom filed a response on August 2, 2023, ECF No. 18, and the Defendants filed a reply in support of their motion on August 16, 2023. ECF No. 19.

## II.     LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the Complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal citation omitted).

## III.    DISCUSSION

### A.    Choice of Law

Before I can decide whether Norcom has met the standard of pleading, I must determine which state's law governs each claim. All parties agree that Connecticut law governs the breach of contract claim as a result of the choice-of-law provision in the Compensation Agreements.[3]

---

[3] The Compensation Agreements' choice-of-law provision itself applies only to Norcom's breach of contract claim. As Norcom acknowledges, the Compensation Agreement's choice-of-law provision is "narrowly worded." ECF No. 18 at 8 n.2. It applies only to "the interpretation and enforcement of [the Compensation Agreements]." ECF No. 1 at ¶¶ 19, 30. "A narrow choice of law provision . . . may not apply to related tort claims." *Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08-CV-1958, 2010 WL 1882316, at *3 (D. Conn. May 10, 2010); *see also In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 132, 144 (D. Conn. 2014) ("[G]eneral choice-of-law provisions in contracts must explicitly include tort claims to prevent a plaintiff from bringing a cause of action under CUTPA.").

ECF No. 14-1 at 8; ECF No. 18 at 12.  All parties also agree that New Jersey law governs Norcom's claims for fraud, conspiracy to commit fraud, unjust enrichment, breach of fiduciary duty, breach of the duty of loyalty, and negligence.  *See* ECF No. 18 at 8 n.2 (Norcom conceding that New Jersey law applies to "most of Plaintiff's extra-contractual claims" apart from its claims for conversion and statutory theft).[4]  The parties dispute, however, whether Connecticut or New Jersey law governs Norcom's conversion and statutory theft claims.  *See id.*; ECF No. 14-1 at 8.

"A federal court sitting in diversity applies the law of the forum state." *U.S. Fidelity Guar. v. S.B. Phillips Co.*, 359 F. Supp. 2d 189, 204 (D. Conn. 2005) (citing *Erie R.R.Co. v. Tompkins*, 304 U.S. 64 (1938)).  This rule also applies to "the laws and rules governing the choice of law to apply when that choice is uncertain." *Id.* at 204–05 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  "Thus, the choice of a Connecticut forum ensures that Connecticut's choice of law will guide this court to the appropriate substantive law." *Id.* at 205.

"When evaluating choice of law questions sounding in tort, [the Connecticut Supreme Court] applies 'the most significant relationship' test set forth in the Restatement (Second)." *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 558 (2016).[5]  Restatement (Second) § 145(2) articulates the following factors for determining which state has the most significant relationship to the occurrence and parties:

---

[4] Although Norcom mentions only its conversion and statutory theft claims as exceptions to its concession that New Jersey law applies to its noncontractual claims, Norcom later argues that its CUTPA claim has broad enough geographic coverage to apply here.  *See* ECF No. 18 at 24–25.  I will address the geographic scope of Norcom's CUTPA allegations in Section III.K, *infra*.

[5] Of course, the Connecticut General Assembly could have altered common law choice-of-law rules in its statute creating a private cause of action for theft, but the language of that statute makes no reference to its geographic scope, and so there is no basis to find that the General Assembly intended to displace ordinary choice-of-law principles. *See* Conn. Gen. Stat. § 52-564.

> Contacts to be taken into account … to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

1 Restatement (Second), Conflict of Laws § 145(2), p. 414 (1971).

On balance, these factors weigh in favor of applying New Jersey law to Norcom's noncontractual claims.  The first factor—where the injury occurred—weighs in favor of applying Connecticut law because Norcom's injury occurred in Connecticut where it suffered the adverse consequences of the alleged conduct.  *See Sack v. Low*, 478 F.2d 360, 366 (2d Cir. 1973) ("[L]oss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence."); *W. Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 322 Conn. 541, 559 (2016) (holding that the plaintiff's injury occurred in the state where the plaintiff suffered the adverse consequences of its decision to purchase the product at issue).  The second factor— where the conduct causing the injury occurred—weighs in favor of applying New Jersey law. The conduct causing the injury here occurred in New Jersey, which is where Quintalino and Cooper were employed, ECF No. 1 at 3 ¶ 14, 6 ¶ 25, where they invoiced Norcom for the allegedly illegitimate expenses on behalf of ANA Marketing, *see id.* at 8 ¶ 42, and where ANA Marketing purportedly provided Norcom with marketing services, *see id.* at 7 ¶¶ 35, 38 (explaining that "Norcom Mortgage permitted the Marlton Branch to purchase advertisements and other marketing services to help generate business" and there was a "substantial uptick in marketing expenses for the Marlton Branch, specifically from . . . ANA Marketing").  The third factor—the citizenship of the parties—does not weigh in either direction.  Quintalino, Cooper, and ANA Marketing are all New Jersey citizens, *id.* at 2 ¶¶ 3–5, while Norcom is a Connecticut

citizen, *id.* at 2 ¶ 2.  Since the parties' citizenships are split between the two states, the third

factor is a "neutral."  *W. Dermatology Consultants, P.C.*, 322 Conn. at 560.  The final factor—

the location where the relationship between the parties is centered—weighs in favor of New

Jersey.  As alleged in the Complaint, the basis of Norcom's relationship with the Defendants was

its opening of a new branch in Marlton, New Jersey.  *See* ECF No. 1 at 3 ¶¶ 11–12, 7–10 ¶¶ 34–

54.  And, again, New Jersey is where Quintalino and Cooper performed their employment

contracts, *id.* at 3 ¶ 14, 6 ¶ 25, where they submitted invoices to Norcom on behalf of ANA

Marketing, *see id.* at 8 ¶ 42, and where ANA Marketing purportedly provided marketing services

to Norcom, *see id.* at 8 ¶¶ 38–39.  Thus, the fourth factor weighs in favor of applying New Jersey

law.

"[I]t is the significance, and not the number, of § 145(2) contacts that determines the

outcome of the choice of law inquiry under the Restatement [Second] approach."  *Jaiguay v.*

*Vasquez*, 287 Conn. 323, 353 (2008).  New Jersey is where the injury-causing conduct occurred

and where the relationship between the parties was centered.  On balance, the factors' application

here indicates that New Jersey had the "greatest contact with the parties in this case."  *W.*

*Dermatology Consultants, P.C.*, 322 Conn. at 560 (concluding that parties had the greatest

contact with New Mexico because that was where the injury-causing conduct occurred and

where the parties' relationship was centered).  Thus, New Jersey law governs Norcom's

noncontractual claims, including its claims for conversion and statutory theft.

## B.  Count One: Fraud

Norcom brings claims for fraud against all Defendants.  "The five elements of common

law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge

or belief by the defendant of its falsity; (3) an intention [by the defendant] that the [plaintiff] rely

on it; (4) reasonable reliance thereon by the [plaintiff]; and (5) resulting damages." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013). In addition, plaintiffs claiming fraud in federal court must satisfy the specificity requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b).("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ."). Rule 9(b) "requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (internal quotation marks omitted).[6]

Defendants argue that Norcom has failed to meet these heightened pleading standards. I disagree. Norcom alleges that it conducted an internal investigation into the Marlton Branch's lack of profitability. ECF No. 1 at 7–8 ¶¶ 36–37. Through this investigation, Norcom discovered a "substantial uptick" in marketing expenses paid to ANA Marketing and that Quintalino and Cooper are the two sole members of ANA Marketing. *Id.* at 8 ¶¶ 38–39. Norcom alleges that from July 2021 to August 2022, Quintalino and Cooper submitted expense requests for services rendered by ANA Marketing. *Id.* at 8 ¶ 42. When asked to provide receipts for ANA Marketing's expenses, Quintalino and Cooper only provided receipts covering a three-month period. *Id.* at 9 ¶¶ 47–48. Norcom alleges that the receipts included "unjustifiable services and/or expenses," and upon questioning, Quintalino and Cooper allegedly admitted that they "used ANA Marketing funds to pay for their personal car payments." *Id.* at 9 ¶ 49, 10 ¶ 51. Norcom also alleges that all Defendants knew that ANA Marketing submitted invoices with

---

[6] "Federal courts sitting in diversity apply state substantive law and federal procedural law." *CIT Bank, N.A. v. Zisman*, No. 17-CV-02126, 2021 WL 3354047, at *3 (E.D.N.Y. Mar. 1, 2021) (internal quotation marks omitted). Oddly, in their briefs, the parties cite Third Circuit precedent in their respective discussions of Rule 9. *See* ECF No. 14-1 at 9; ECF No. 18 at 8. Second Circuit precedent governs this Court's application of Rule 9.

illegitimate expenses to Norcom.  *Id.* at 11 ¶ 59–60.  Moreover, Norcom attached its demand letter to Quintalino and Cooper to its Complaint.  *See* ECF No. 1-6.  In the letter, Norcom noted that the three months' worth of expenditures ANA Marketing submitted to Norcom included $1,647.52 "for a prior office space rental and associated office expenses, which Norcom does not consider to have been legitimately charged to Norcom by ANA," and a profit component for ANA Marketing of $27,753.82 for the three-month period.  *Id.* at 3.

These allegations lay out with particularity an alleged scheme between the Defendants to defraud Norcom by submitting "expenses that either did not exist or were never in fact performed on behalf of Norcom."  *Id.* at 11 ¶ 63.  The Complaint and the attached documents satisfy each element of Rule 9(b)'s heightened pleading requirements for fraud claims.  The Complaint identifies the statements that Norcom contends were fraudulent—*i.e.*, the ANA Marketing invoices, including the specific item of $1,647.52 "for a prior office space rental and associated office expenses" that was allegedly improperly charged to Norcom.  The Complaint also identifies the speakers—ANA Marketing, Quintalino, and Cooper—as well as where and when the statements were made—New Jersey between July 2021 to August 2022, with the specific expense and profit items called out in the demand letter appearing in the May, June, and July 2022 invoices.  Finally, the Complaint and the attached documents explain why the statements were fraudulent.  Specifically, they allege that Quintalino and Cooper used their positions to deceive Norcom into paying ANA Marketing invoices that were inflated—resulting in substantial profits to Norcom's employees at its own expense—and that contained illegitimate expenses.  Defendants argue that Norcom "fails to describe a single alleged misrepresentation."  ECF No. 14-1 at 10.  While it is true that "[s]imply stating that the invoices were inflated is insufficient," *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, No. 14 CIV. 804, 2014

WL 3857053, at *15 (S.D.N.Y. Aug. 5, 2014), Norcom has done more than that.  As noted, it has
identified at least one specific charge—the $1,647.52 for "prior office space rental"—that it
claims was bogus, and it has further identified $27,753.82 in profit over three months the
Defendants allegedly improperly took at its expense.  It also alleges that Quintalino and Cooper
used some of the funds to make personal car payments.  While it is possible that, as the
Defendants suggest, the profits from ANA Marketing's operations were lawful and that
Quintalino's and Cooper's use of those profits to pay for personal expenses was proper, at this
stage, I must draw all reasonable inferences in favor of Norcom.  As such, I find that Norcom has
satisfied the specificity requirements of Rule 9(b).

Defendants also argue that Norcom "fails to sufficiently describe how it suffered a loss
'as a result of' the alleged misrepresentations."  ECF No. 14-1 at 10.  But that is plainly not the
case.  Norcom alleges that it "relied on the false representations made on the ANA Marketing
Invoices, and, to its detriment, paid the amounts claimed to be 'due and owed' on the invoices to
ANA Marketing."  *Id.* at 11 ¶ 62.  Norcom also alleges that it paid ANA Marketing $132,800,
ECF No. 1 at 9 ¶ 45, and that some or all of those funds were used for illegitimate purposes—
*i.e.*, expenses unrelated to advertising services, *id.* at 11 ¶¶ 63–64.  Thus, Norcom has clearly
alleged loss as a result of the alleged fraudulent scheme.

Finally, Defendants argue that even if Norcom's allegations are sufficient under Rule
9(b), the allegations lie only against ANA Marketing.  ECF No. 14-1 at 11.  The Complaint
states that "[a]s the two sole members of ANA Marketing, Quintalino and Cooper knew or
should have known that the ANA Marketing Invoices submitted to Norcom Mortgage for
payment had illegitimate charges or expenses."  ECF No. 1 at 9 ¶ 50.  Defendants argue that this
statement "merely vaguely attributes ANA's allegedly fraudulent behavior."  ECF No. 14-1 at

11.  But the fact that Quintalino and Cooper were ANA Marketing's sole members is a strong indicator of their complicity in the alleged scheme.  *See Concern Sojuzvneshtrans v. Buyanovski*, 80 F. Supp. 2d 273, 282 (D.N.J. 1999) (holding that "it is a fair inference that both defendants were aware of and furthered the fraudulent activity" where they were "the sole shareholders of" the corporate defendant).  Moreover, Norcom alleges that Quintalino and Cooper "utilized their management positions to submit [the] fraudulent invoices."  ECF No. 1 at 1 ¶ 1.  And, as discussed previously, Norcom also alleges that Quintalino and Cooper admitted that they used ANA Marketing funds for their personal car payments.  ECF No. 1 at 10 ¶ 51.  These allegations state with particularity Quintalino's and Cooper's involvement in and perpetuation of the alleged fraud.

In sum, I find that Norcom has alleged sufficient factual material to sustain its claim for fraud against all Defendants.  Thus, I deny the Defendants' motion to dismiss Count One.

### C.    Count Two: Conspiracy to Commit Fraud

Norcom also brings a claim against all Defendants for conspiracy to commit fraud.  Civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."  *Banco Popular No. America v. Gandi*, 184 N.J. 161, 177 (2005) (internal quotation marks omitted).  Like Norcom's fraud claim, its claim for conspiracy to commit fraud must also satisfy the specificity requirements of Rule 9(b).  *See, e.g.*, *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 447 (S.D.N.Y. 2017) ("A claim for conspiracy to commit fraud is also subject to Rule 9(b)'s heightened pleading standard.")

Defendants argue that Norcom's conspiracy claim fails under the "intracorporate conspiracy doctrine." The intracorporate conspiracy doctrine provides that "an entity cannot conspire with one who acts as its agent." *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003); *see also World Express & Connection, Inc. v. Crocus Invs., LLC*, No. 15-CV-8126, 2020 WL 5088633, at *20 (D.N.J. Aug. 28, 2020) ("The intracorporate conspiracy doctrine bars allegations of conspiracy because employees generally cannot conspire with their organization."); *see also GVC Ltd. v. Valley Nat'l Bank*, No. BER-L-2459-22, 2022 N.J. Super. Unpub. LEXIS 1572, at *15–16 (N.J. Super. Aug. 29, 2022) ("A corporation and its employees are not separate persons for the purpose of civil conspiracy, and a conspiracy cannot exist in the absence of two or more persons acting in concert." (internal quotation marks omitted)). An employee is an agent and "is acting within the scope of the employee's employment if the conduct (1) is of the kind that the employee is employed to perform, (2) occurs substantially within the authorized time and space limits, and (3) is actuated, at least in part, by a purpose to serve the employer." *Kielty v. Ali*, No. CIV. A. 07-5719 MLC, 2008 WL 2783340, at *3 (D.N.J. July 16, 2008).

Here, there are no allegations indicating that Quintalino and Cooper were acting within the scope of their employment with ANA Marketing when performing the allegedly fraudulent acts at issue here. As an initial matter, there is no indication that Quintalino and Cooper are or were employees of ANA Marketing, as the Complaint states only that they "are the two sole members of ANA Marketing." ECF No. 1 at 8 ¶ 39. In any event, the Complaint indicates that Quintalino and Cooper were acting in their capacities as employees of Norcom, not ANA Marketing, when they engaged ANA Marketing for advertising services. The Complaint states that "Norcom Mortgage permitted the Marlton Branch to purchase advertisements and other

13

marketing services to help generate business." *Id.* at 7 ¶ 35.  The Complaint further states that "Quintalino and Cooper, *in their capacities as Vice President and Branch Manager, and Assistant Vice President and Assistant Branch Manager of the Marlton Branch*, submitted expense requests for services rendered by ANA Marketing." *Id.* at 8 ¶ 42 (emphasis added). Thus, the Complaint explicitly states that Quintalino and Cooper were acting in their capacities as Norcom employees when they allegedly purchased advertising services from ANA Marketing and subsequently submitted ANA Marketing expenses to Norcom.  Defendants themselves acknowledge as much in their motion to dismiss.  *See* ECF No. 14-1 at 19 (arguing that Norcom "expressly encouraged and permitted" Quintalino and Cooper to "purchase advertisements and other marketing services to help generate business").

Because there is no indication that Quintalino and Cooper took these allegedly fraudulent acts in their capacities as ANA Marketing employees, the intracorporate conspiracy doctrine does not bar Norcom's claims for conspiracy to commit fraud against them.  Thus, I deny the Defendants' motion to dismiss Count Two.

### D.    Count Three: Breach of Contract

Norcom brings a breach of contract claim against Quintalino and Cooper for failing to disclose that they were members of ANA Marketing in violation of Norcom's conflict of interest policy stated in the Employee Handbook.  As previously discussed, the parties agree that Norcom's breach of contract claim is governed by Connecticut law.  Under Connecticut law, to recover for a breach of contract plaintiffs must allege four elements: " [1] formation of an agreement, [2] performance by one party, [3] breach of the agreement by the other party, and [4] damages." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 114 (D. Conn. 2014).

Quintalino and Cooper argue that the conflict-of-interest policy "cannot form the basis of

a breach of contract claim" because the policy is contained within the Employee Handbook,

which, they argue, does not constitute a contract.  ECF No. 14-1 at 14.  They point out that the

Employee Handbook disclaims that it is a contract.[7]  The first page states: "This handbook does

not constitute a contract between the company and the employee."  ECF No. 14-2 at 1.  And the

third page of the Handbook contains a separate section labeled "Guidelines Disclaimer" that

states: "This handbook gives an overview of the general, personnel policies of Norcom . . . This

handbook is not an employment contract and is not intended to create contractual obligations."

*Id.* at 3.  In addition, the "Employee Manual Acknowledgment," which Quintalino and Cooper

each signed, stated in bold font "**I also understand that this handbook is not intended to serve

as a contract either express or implied** . . . ."  ECF No. 1-2 at 2 (emphasis in original), ECF

No. 1-4 at 2 (emphasis in original).

"Although representations in an employee handbook may under certain circumstances

give rise to an express or implied contract between an employer and employee," that is not the

case where the handbook "contain[s] an explicit disclaimer" that is "clear and unequivocal."

*Cardona v. Aetna Life & Cas.*, No. 3:96-CV-1009, 1998 WL 246634, at *5 (D. Conn. May 8,

1998).  The disclaimer in the Employee Handbook here is clear and unequivocal.  *See id.*

(finding a disclaimer to be clear an unequivocal even where it was on the second page of the

handbook and not specifically labeled "disclaimer"); *see also Davis v. Liberty Mut. Ins. Co.*, 218

---

[7] In deciding a motion to dismiss, the court is "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint."  *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC,* 298 F.3d 136, 140 (2d Cir. 2002).  Norcom quotes from the Employee Handbook in the Complaint.  *See e.g.*, ECF No. 1 at 4–5 ¶¶ 20–22. Further, the complaint relies on the terms and effects of the Employee Handbook, including the provision regarding conflicts of interest, to allege breach of contract.  *See id.* at 4 ¶ 21.  Thus, I may consider the Employee Handbook in its entirety, which Defendants attached to their motion (ECF No. 14-2), even though Norcom did not attach it to its Complaint.

F. Supp. 2d 256, 261 (D. Conn. 2002) (finding a disclaimer clear and unequivocal where it was on the first page of the handbook even without a "disclaimer" label).  Thus, the Employee Handbook does not constitute a contract.

Norcom concedes that the Employee Handbook is not a contract, but it argues that the Handbook's terms were incorporated by reference into Quintalino's and Cooper's Compensation Agreements.  ECF No. 18 at 13–14.  Norcom alleges that Quintalino's and Cooper's Compensation Agreements, which each signed, stated that they "acknowledge[] and agree[]" that they are "subject to all policies and procedures of Norcom."  ECF No. 1 at 4 ¶¶ 17–18, 6 ¶¶ 28–29.  Norcom further alleges that Quintalino and Cooper received copies of the Employee Handbook outlining Norcom's policies and procedures and subsequently signed acknowledgements that they "read and understood [Norcom's] policies and procedures."  *Id.* 4–5 ¶¶ 20–22, 7 ¶¶ 31–32.

"The terms of an employee handbook may be incorporated into the existing employment contract."  *Maloney v. Connecticut Orthopedics*, 47 F. Supp. 2d 244, 249 (D. Conn. 1999).  It is true that the Compensation Agreements does not explicitly incorporate by reference the Employee Handbook and only vaguely states that Quintalino and Cooper would be "subject to all policies and procedures of Norcom."  And it is true that the Employee Handbook contains clear and unambiguous contract disclaimers.  These issues may very well be dispositive of Norcom's breach of contract claim.  At this stage of the litigation, however, Norcom has done enough to state a plausible claim for breach of contract by alleging that the terms of the Employee Handbook were incorporated by reference in Quintalino's and Cooper's separate Compensation Agreements.  *See Simons v. Yale Univ.*, No. 3:19-CV-1547, 2020 WL 5816950, at *9 (D. Conn. Sept. 30, 2020) (saving the issue of "the nature and content" of any contract created by an

employment manual for a "later stage of this case"); *see also Lombardi v. Mktg. Corp. of Am.*, No. CV91 0293281, 1994 WL 247956, at *2 (Conn. Super. Ct. May 23, 1994) (resolving at the summary judgment stage the question of whether an employee handbook's contract disclaimer was fatal to the plaintiff's breach of contract claim).  As such, I deny the Defendants' motion to dismiss Count Three.

### E.      Count Four: Unjust Enrichment

Count Four claims unjust enrichment against ANA Marketing.  Defendants argue that the claim should be dismissed for failure to state a claim and on the grounds that the claim is barred by the economic loss doctrine.  ECF No. 14-1 at 16–17.

Defendants argue that Norcom's unjust enrichment claim fails to state a plausible claim for relief.  ECF No. 14-1 at 16.  "Under New Jersey law, there are three elements a plaintiff must allege to properly state a claim for unjust enrichment: (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it."  *Greenberger v. Varus Ventures LLC*, 2014 WL 6991993, at *9 (D.N.J. Dec. 10, 2014) (internal quotations omitted).  "The doctrine is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  *Id.* (internal quotations omitted).

Norcom alleges that it paid ANA Marketing, an entity secretly owned by its two employees, a total of $132,800 for invoices, and that these payments were at least in some cases for services that ANA Marketing did not actually perform.  ECF No. 1 at 9 ¶¶ 45–49, 14–15 ¶¶ 58–63.  Norcom further alleges that "receipts purporting to show ANA Marketing's expenditures on behalf of Norcom Mortgage for the months of May, June and July 2022 . . . included unjustifiable services and/or expenses" and Defendants have not provided receipts to justify the

remaining invoices.  *Id.* at 9 ¶¶ 48–49.  Norcom also alleges that Quintalino and Cooper used

ANA Marketing funds to pay for their personal car payments, suggesting that ANA Marketing

submitted invoices with inflated expenses.  *Id.* at 10 ¶ 51.  These allegations are sufficient to

plausibly plead that ANA Marketing received a monetary benefit at Norcom's expense and that

retaining the money would be unjust because ANA Marketing either did not provide the services

for which Norcom paid or fraudulently inflated the expenses submitted to Norcom.  *See, e.g.*,

*Horizon Blue Cross Blue Shield of N.J. v. Focus Express Mail Pharmacy, Inc.*, No. 17-CV-571,

2017 WL 3588195, at *7 (D.N.J. Aug. 16, 2017) (declining to dismiss unjust enrichment claim

where the plaintiff alleged that the defendants were unjustly enriched as a result of "fraud and

improper billing").

Next, I consider the economic loss doctrine.  "Generally, the economic loss doctrine

prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by

contract."  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009).  "[T]he critical

issue with regard to economic loss is whether the allegedly tortious conduct is extraneous to the

contract."  *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593

(D.N.J. 2014) (internal quotation marks omitted).  "Only tort claims asserting the defendant

breached a duty owed to the plaintiff independent of the contractual duties may be alleged

alongside a breach of contract claim."  *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F.

Supp. 3d 449, 462 (D.N.J. 2020).

Defendants argue that Norcom "has alleged contractual relationships with the

Defendants, and thus its equitable claim of unjust enrichment cannot lie."  ECF No. 14-1 at 16.

Norcom alleges that it "did not enter into a contract with ANA Marketing, nor did it authorize

any of its employees (including those in the Marlton Branch) to enter into a contract with ANA

Marketing." ECF No. 1 at 8 ¶ 41. This allegation is, however, undercut by Norcom's

allegations that it "permitted the Marlton Branch to purchase advertisements and other marketing

services to help generate business," *id.* at 7 ¶ 35, and that it paid ANA Marketing invoices from

July 2021 through July 2022, *id.* at 8–9 ¶¶ 42–45. These facts suggest that Norcom formed an

implied-in-fact contract with ANA Marketing through its agents, Quintalino and Cooper. *See*

*Huyler Paper Stock Co. v. Information Sup. Corp.*, 117 N.J. Super. 353, 362 (Law Div. 1971)

("Receipt and acceptance either of goods or of the price constitutes an unambiguous overt

admission by both parties that a contract actually exists."); *Brant Screen Craft, Inc. v. Watermarc*

*Graphics, Inc.*, No. 10-CV-3843, 2011 WL 4056240, at *3 (D.N.J. Sept. 12, 2011) ("Contracts

implied in fact arise out of the manifestation of a consented to promise.").

   But courts have "regularly permitted claims for both unjust enrichment and breach of

contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims

would be premature." *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736

(D.N.J. 2008) (collecting cases). Permitting both a breach of contract claim and unjust

enrichment claim at the motion to dismiss stage "is consistent with prior case law as well as

Federal Rule of Civil Procedure 8(d), which permits alternative statements of a claim and

inconsistent claims at the pleadings stage." *Id.*; Fed. R. Civ. P. 8(d)(2) ("A party may set out 2

or more statements of a claim or defense alternatively or hypothetically, either in a single count

or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient

if any one of them is sufficient."). Thus, I find it premature to dismiss Norcom's unjust

enrichment claim on the basis of the economic loss doctrine. As the *MK Strategies* court

explained, "the Court is not foreclosing the possibility that [the plaintiff's] unjust enrichment

claim may eventually be dismissed based on the presence of an enforceable contract between

[the parties].  At this time, however, the Court finds it premature to dismiss [the plaintiff's] unjust enrichment claim on this ground." *MK Strategies, LLC*, 567 F. Supp. 2d at 735 n.12.

Because Norcom has sufficiently pled its unjust enrichment claim and because it is permitted to allege alternative theories of recovery, I deny Defendants' motion to dismiss Norcom's unjust enrichment claim.

### F.    Count Five: Conversion

Count Five claims that "[t]hrough the submission of the fraudulent invoices by Cooper and Quintalino from ANA Marketing, Defendants have converted $132,800.00 from Norcom Mortgage."  ECF No. 1 at 15 ¶ 75.  Under New Jersey law, "[t]he tort of conversion is the wrongful exercise of dominion and control over property owned by another in a manner inconsistent with the owner's rights."  *Advanced Enters. Recycling, Inc. v. Bercaw,* 376 N.J. Super. 153, 161, (App. Div. 2005).  "Although conversion claims normally involve chattel, money may be the subject of conversion claims as well."  *N. Haledon Fire Co. No. 1 v. Borough of N. Haledon*, 425 N.J. Super. 615, 631 (App. Div. 2012).

Defendants argue that Norcom's claim for conversion fails because the funds sought are not identifiable and thus the claim sounds in debt rather than in tort.  ECF No. 14-1 at 19.  "An action for conversion will not lie in the context of a mere debt . . . .  Where there is no obligation to return the identical money, but only a relationship of a debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."  *Advanced Enterprises Recycling, Inc.*, 376 N.J. Super. at 161 (where "funds in question were not deposited with [defendant by plaintiff], but were the proceeds of sales made [to third parties]," the plaintiff and the defendant stood "in a debtor-creditor relationship" and trial court's finding of conversion was erroneous); *see also Scholes Elec. & Commc'ns, Inc. v. Fraser*, No. 04-CV-3898, 2006 WL

1644920, at *5 (D.N.J. June 14, 2006) (under New Jersey law, "[w]hen money, . . . is the subject of a conversion claim, . . . [t]he plaintiff must show that the money in question was identifiably the plaintiff's property or that the defendant was obligated to segregate such money for the plaintiff's benefit" (citing cases)); *Am. Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, No. 11-1279, 2011 WL 3022243, at *7 (D.N.J. July 22, 2011) ("Because a monetary loss can be repaid in whole by other money, allegedly converted money is deemed a mere debt unless there is a requirement that the 'identical money' be repaid.").

Contrary to Defendants' contention that Norcom's conversion claim sounds in debt, Norcom alleges that Defendants have an obligation to return the identical money—*i.e.*, some or all of the $132,800 Norcom paid to ANA Marketizing. According to Norcom, Defendants converted Norcom's money "[t]hrough the submission of the fraudulent invoices by Cooper and Quintalino from ANA Marketing." ECF No. 1 at 15 ¶ 75. As Norcom alleges, it paid ANA Marketing the $132,800 "[u]nder the impression that Norcom Mortgage was paying ANA Marketing for legitimate services rendered and related expenses." *Id.* at 15 ¶ 72. Under Norcom's theory of the case, Defendants are required to repay some or all of the $132,800. Defendants rely on caselaw in which a plaintiff alleged that the defendant failed to fully compensate it for services rendered. *See, e.g.*, *D & D Tech., Inc. v. CytoCore, Inc.*, No. 14-CV-4217, 2014 WL 4367314, at *4 (D.N.J. Sept. 2, 2014) ("New Jersey courts have expressly restricted application of the doctrine of conversion when it seeks to turn a claim based on breach of contract into a tort claim."). But Norcom does not allege in this claim that Defendants failed to fully compensate it or otherwise merely breached a contract; rather, it alleges that Defendants fraudulently obtained some or all of the funds Norcom paid to ANA Marketing. Fraudulently obtained funds can constitute identifiable converted property. *See Importers Serv. Corp. v.*

*Aliotta*, No. 22-CV-4640, 2023 WL 3173568, at *12 (D.N.J. Apr. 28, 2023) (noting that "Defendants[] are incorrect that the allegedly converted monies are unidentifiable, as they consist of the excess funds that Defendants purportedly procured as a product of fraud . . . ," but dismissing claim on a separate ground).  It is true that Norcom has not explained what portion of the $132,800 was wrongfully converted, but at the motion to dismiss stage, this is not required, as the court must draw all reasonable inferences in Norcom's favor.  And it is a reasonable inference that all of the $132,800 was wrongfully converted because payment of it was induced under false pretenses, *i.e.*, that ANA Marketing was an independent business separate and apart from the two Norcom employees who were, unbeknownst to Norcom, orchestrating the arrangement.  Thus, I deny Defendants' motion to dismiss Norcom's conversion claim.

### G.      Count Six: Statutory Theft

In Count Six, Norcom brings a claim for statutory theft under Conn. Gen. Stat. § 52-564 against all Defendants.  Defendants argue that this claim should be dismissed because New Jersey law applies to the claim.  ECF No. 14-1 at 20.  As discussed in Section III.A, *supra*, New Jersey law governs Norcom's non-contractual claims, including statutory theft.  As such, I must dismiss this claim.  Nevertheless, I will grant Norcom's request for leave to amend the Complaint to plead statutory theft under any analogous New Jersey statute.  ECF No. 18 at 22 n.5; *see also Kahl v. United States Fire Ins. Co.*, No. 21-CV-10359, 2023 WL 5346578, at *3 & n.1 (D.N.J. Aug. 21, 2023) (granting plaintiff leave to replead claims under an appropriate state's law).

### H.      Count Seven: Breach of Fiduciary Duty

Count Seven asserts a claim for breach of fiduciary duty against Quintalino and Cooper. "To state a claim for breach of fiduciary duty, a party much show (1) a fiduciary duty existed

between Plaintiff and Defendant, (2) the defendant breached that duty, and (3) damages as a result of the breach." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 717 (D.N.J. 2012).

Defendants argue that Norcom failed to sufficiently plead the duty and breach elements. ECF No. 14-1 at 17. Quintalino served as Vice President at Norcom and Branch Manager of the Marlton Branch, and Cooper served as Assistant Vice President and Assistant Branch Manager. *Id.* at 3 ¶ 13, 5 ¶ 24. As corporate officers of the company, Quintalino and Cooper owed Norcom a fiduciary duty. *See, e.g.*, *Kaye v. Rosefielde*, 223 N.J. 218, 229–31 (2015); *see also Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 759 (D.N.J. 2013) ("It is well established that corporate officers owe a fiduciary duty to the corporation itself."). As such, Norcom has sufficiently pled the duty element of its breach of fiduciary duty claim.

Norcom has also sufficiently pled the breach element of its claim. While it is true, as Defendants point out, that Norcom permitted Quintalino and Cooper to purchase marketing services, this authorization did not permit them to purchase such services from a company that they secretly owned and controlled, thereby benefitting themselves and creating an obvious conflict of interest. Nor did it permit them to defraud Norcom. Norcom alleges that Quintalino and Cooper submitted fraudulent invoices to Norcom on behalf of ANA Marketing and that Quintalino and Cooper "knew or should have known that the ANA Marketing Invoices submitted to Norcom Mortgage for payment had illegitimate charges or expenses." ECF No 1 at 9 ¶¶ 49–50. Norcom also alleges that Quintalino and Cooper personally benefitted from this conduct. *Id.* at 10 ¶ 51 (alleging that Quintalino and Cooper admitted that they "used ANA Marketing funds to pay for their personal car payments"). This conduct constitutes a breach of the fiduciary duty of loyalty. *Tiburon Lockers, Inc. v. Fletcher*, No. CV 15-6970, 2016 WL

4487852, at *4 (D.N.J. Aug. 24, 2016) ("[A]n employee breaches its fiduciary duty by acting contrary to the employer's interest." (internal quotation marks omitted)).  Assuming that these allegations are true, as I must for the purposes of this motion, Norcom has done enough to plausibly plead the breach element of its fiduciary duty claim.

Because Norcom has sufficiently pled the duty and breach elements of its breach of fiduciary duty claim, I deny Defendants' motion to dismiss this claim.

## I.      Count Eight: Breach of the Duty of Loyalty

Count Eight asserts a claim for breach of the duty of loyalty against Quintalino and Cooper.  Under New Jersey law, "[e]very employee owes a duty of loyalty to [his/her] employer."  *Fields v. Thompson Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004).  The duty requires that the "employee must not, while employed, act contrary to the employer's interests." *Id.*

Defendants argue that "[t]here is no reasonable interpretation of the facts alleged that suggests Quintalino and Cooper . . . engaged in self-dealing to [Norcom's] detriment.  To the contrary, Quintalino and Cooper did what they were expressly encouraged and permitted to do— 'purchase advertisements and other marketing services to help generate business.'"  ECF No. 14-1 at 18–19.  This argument lacks merit because, as noted, the authorization to purchase marketing services was obviously not an authorization to defraud the company.  Further, Norcom adequately alleges that Quintalino and Cooper breached the duty of loyalty by "utiliz[ing] their positions of power at the Marlton Branch and their undisclosed membership of ANA Marketing (a clear conflict of interest pursuant to the Employee Handbook), to personally benefit from the funds received by Norcom Mortgage for the ANA Marketing Invoices that contained falsely represented services and expenses."  ECF No. 1 at 19 ¶ 60.  According to Norcom, "[i]n

submitting the ANA Marketing Invoices to Norcom Mortgage for payment, which they knew or should have known had false representations about the services rendered, Cooper and Quintalino advanced their interests to the detriment of Norcom Mortgage." *Id.* at 19 ¶ 61. Assuming that these allegations are true for the purposes of this motion, they plainly state a claim for breach of the duty of loyalty. Specifically, these allegations indicate that Quintalino and Cooper acted in their own self-interest and contrary to Norcom's interest in submitting invoices from an entity they secretly owned and controlled that included illegitimate charges for their personal benefit. Thus, I deny Defendants' motion to dismiss Count Eight.

**J.     Count Nine: Negligence**

Count Nine asserts a negligence claim against Quintalino and Cooper. Defendants seek to dismiss this claim based on the economic loss doctrine, arguing that "[t]his cause of action is based upon the employment contracts, and thus cannot be a cognizable claim in tort." ECF No. 14-1 at 21.

It is not the case, as Defendants suggest, that "a negligence claim may not arise out of the same circumstances which give birth to contract action." *ICI Australia Ltd. v. Elliott Overseas Co.*, 551 F. Supp. 265, 268 (D.N.J. 1982). "Under New Jersey law, a tort remedy does not arise from a contractual relationship *unless the breaching party owes an independent duty imposed by law.*" *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002) (emphasis added); *see also Intervet, Inc. v. Mileutis, Ltd.*, No. 15-CV-1371, 2016 WL 740267, at *3–4 (D.N.J. Feb. 24, 2016) ("Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract."). Here, New Jersey law independently imposes a duty on employees to their employers. As discussed previously, Quintalino and Cooper were fiduciaries of Norcom, and "[e]very employee owes a

duty of loyalty to their employer." *Fields*, 363 F.3d at 270 (applying New jersey law).  Norcom alleges that Quintalino and Cooper negligently violated this duty by knowingly "submit[ting] the ANA Marketing Invoices to Norcom Mortgage for payment with falsely represented services and expenses."  ECF No. 1 at 20 ¶ 60.  Because New Jersey law imposed duties on Quintalino and Cooper as officers and employees of Norcom and because the economic loss doctrine does not bar negligence claims where the law imposes an independent duty, I deny Defendants' motion to dismiss Count Nine.

### K.      Count Ten: CUTPA

In Count Ten, Norcom brings claims against the Defendants under CUTPA.  CUTPA provides a private right of action for "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b."  Conn. Gen. Stat. § 42-110g(a).  Section 110b provides in pertinent part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  "Trade" and "commerce" means "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."  Conn. Gen. Stat. § 42-110a(4).  As with Norcom's claim for statutory theft, Defendants seek to dismiss this claim because Connecticut law does not govern the conduct that supports this claim.  *See* ECF No. 14-1 at 22.

The conduct targeted by the CUTPA claim occurred in New Jersey.  *See, e.g.*, ECF No. 1 at 21 ¶ 117 ("*While employed in management positions at the Marlton Branch*, Defendants have engaged in deceptive conduct by submitting the ANA Marketing Invoices, that contained falsely

represented services and expenses, to Norcom Mortgage for payment." (emphasis added)).

However, "[t]he fact that the allegations giving rise to the CUTPA claim occurred out-of-state is

not necessarily fatal, because CUTPA does not require that a violation actually occur in

Connecticut so long as the violation is tied to a form of trade or commerce intimately associated

with Connecticut or if, where Connecticut choice of law principles are applicable, those

principles dictate application of Connecticut law." *Peterson v. Wells Fargo Bank, N.A.*, No.

3:20-CV-781, 2022 WL 972415, at *11 (D. Conn. Mar. 31, 2022) (internal quotation marks

omitted); *see* Conn. Gen. Stat. § 42-110a(4) (defining "trade" and "commerce" as "the

advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of

any services and any property, tangible or intangible, real, personal or mixed, and any other

article, commodity, or thing of value *in this state*" (emphasis added)).  As discussed previously

in Section III.A, *supra*, Connecticut choice of law principles dictate application of New Jersey

law here.  Thus, Norcom's CUTPA claim can survive only if "the violation is tied to a form of

trade or commerce intimately associated with Connecticut."

It is not.  The core of Norcom's CUTPA claim relates to allegedly unfair trade practices

that occurred in New Jersey, perpetrated by New Jersey residents, regarding allegedly fraudulent

invoices for marketing services performed in New Jersey.  Where the "crux" of a CUTPA claim

arises from conduct occurring outside of Connecticut, the "nexus [to Connecticut] is insufficient"

to maintain a CUTPA claim.  *Id.* at *12 (holding that the plaintiff's "allegations [were]

insufficiently associated with Connecticut to give rise to a CUTPA claim" where the contacts to

Connecticut were limited to the plaintiff's signing a contract in Connecticut and the filing of

bankruptcy case in the District of Connecticut).  "Though 'Connecticut undoubtedly has an

interest in applying its law to ensure that local businesses do not engage in unfair trade practices

in this state,' such interest is 'not especially strong' where there is only 'limited' contact between the parties in Connecticut." *Peterson*, 2022 WL 972415 at *11 (quoting *W. Dermatology Consultants, P.C.*, 322 Conn. at 561).

"Because neither of the conditions for bringing a CUTPA claim where the violation did not occur in Connecticut is satisfied," *id.* at *12, Norcom cannot bring a CUTPA claim. As such, I dismiss this claim.

## IV.     CONCLUSION

For the reasons above, I grant in part and deny in part the motion to dismiss (ECF No. 14). I grant the motion with respect to Counts Six and Ten. I deny the motion as to all other counts.

Count Six is dismissed without prejudice to Norcom filing, within 30 days of the entry of this order, an amended complaint that pleads statutory theft under New Jersey law. Norcom may not amend its Complaint in any other respect. Defendants will have 21 days from the filing of any amended complaint respond to the amended complaint.


                                                   IT IS SO ORDERED.


                                                   _____
                                                           /s/
                                                   Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut
          February 26, 2024